Good afternoon, everyone. Judge Fischer, can you see us and hear us? Good afternoon. I can see both of you. I hope you can see me and hear me. We can. More importantly, the question is can you hear and see the lawyers when they talk. I think we will. Okay, good, good. I should tell the lawyers before we begin that our very able staff has been most complimentary of your willingness to work together preparing this case for oral arguments. So they think you're a model for the way things ought to be done. So if anything went wrong, don't tell us because we have a good impression at this point. Good. Mr. Sellinger, are you ready to proceed? May it please the Court, my name is Philip Sellinger, Counsel for American Express Travel-Related Services. May I reserve three minutes for rebuttal, please? Surely. In order to uphold Chapter 25, the District Court needed to find that the statute's presumption that travelers' checks are abandoned after three years was rational, and there simply was no basis it could make that finding in this case. The District Court's conclusion and the State's position is based on a false syllogism. If travelers' checks are cashed within three years, if 96 percent of the travelers' checks are cashed within three years of purchase, then the remaining travelers' checks presumably will never be used and are abandoned. The premise of the syllogism, that 96 percent of the travelers' checks will be used in three years, is correct. But there's no logical nexus between the premise and the conclusion. What's required for a logical nexus? Certainly mathematical precision is not required here, correct? Correct. And it's a very deferential standard. Mathematical precision is not required, and this Court need not fine-tune the number. But there must be a logical, rational basis. With no rational basis, the statute can't stand. Well, what did the District Judge say on this point? I'm sorry? What did the District Judge say on this point? Actually, what the District Court did is it looked at the fact that 96 percent of the travelers' checks were used within three years, and it stopped the analysis right there. It looked no further. That was the end of the analysis. And if you look at the statistics, the facts, in 2007 alone, New Jersey sold $86 million worth of travelers' checks. 3.4 million of those remained unused after three years. And that $3.4 million is what the statute addresses, because the statute only addresses abandoned property, not the travelers' checks which were used in three years that everybody agrees were not abandoned because they were cashed. So what happens to that remaining $3.4 million in travelers' checks that were not used in the first three years? All but $250,000 of those travelers' checks are cashed within 15 years. Ninety percent of them are cashed within 15 years, 98 percent cashed at some point in time. So the presumption that 98 percent of the presumption that travelers' checks that are not cashed in three years are abandoned is simply wrong. It's wrong 98 percent of the time, because 98 percent of the $3.4 million of travelers' checks that are subject to the statute, and those are the only travelers' checks that are subject to the statute, because the statute deals only with abandoned property. Of the $3.4 million in travelers' checks, all but $250,000 are cashed. So the presumption is simply wrong 98 percent of the time. Mr. Selinger, a question I would have, a very basic question. Whose money is it that's being held? The money belongs to, the ultimate right, of course, belongs to the owner. But American Express has a right to invest the proceeds. That is the sole consideration that American Express receives in its contract with the owners of the travelers' checks. So American Express has negotiated and bargained for the right to invest those proceeds, the entire business model. Is that an Express contract or is it some kind of implied contract? Is there a document somewhere that memorializes the terms of the agreement between American Express and the purchaser of the travelers' checks? Well, the travelers' check itself is the contract, but the abandonment period Well, but if the check itself is the contract, then there must be some terms either expressed on the check itself or implied from the circumstances of the arrangement between Amex and purchaser, right? There are terms which are expressed on the check itself, but I think if you're asking about the right of American Express to invest the proceeds, that is an implied term. And it's implied by the nature of the transaction. The owner gives American Express the money on the express promise to pay when they come back and countersign the check. But other than that, there are no limits on the use of the money by American Express, and American Express is entitled under the circumstances implied into the transaction to use those proceeds itself. The state has expressed many rationales for the statute, and we understand the deferential standard. However, under the Supreme Court's decision in Anderson National Bank, the property must be abandoned, and you never get to the rationales unless the property is abandoned. The Uniform Act presumes the abandonment of travelers' check, although it uses a 15-year period based on statistical evidence. And the Sixth Circuit's decision in Hollenbeck, although it faulted the decision of the district court for a more stringent standard that it applied, it did embrace the central argument that I'm making here today, that the travelers' checks must be abandoned. And the Sixth Circuit did what the trial court in this case did not do. It went and actually looked at the conclusion of the premise. It did not just look at the travelers' checks that were cashed, in that case, within seven years under the Kentucky statute, but it went and looked what happens to the remaining travelers' checks. That is the proper analysis, and that's the analysis that the district court here failed to make. It looked only at the 96 percent that were cashed within three years, and the analysis stopped. Now, for the future, the business model can be changed to accommodate for those loss of profits that you say that you would lose. Is that correct? That is correct. And from a contract clause perspective, which I'll get to in a moment, the retroactive impact of the statute is most significant because it substantially impairs the contractual relationship. But from a due process perspective, the statute must be rational. It's a deferential standard, but there must be some basis in reality. And as the Kanye's court held, the Supreme Court Isn't 96 percent a basis in reality? Most of your argument, it seems to me anyway, so far with respect to the substantive due process, seems to be ouched in statistical terms, isn't it? Yes. But the Supreme Court has made clear that for presumptions to stand, they cannot be arbitrary. They must be rational. And under the Murray decision, the Supreme Court held that a presumption to stand cannot be oftentimes contrary to the fact. But what I'm asking you is what is not rational? Rational about the cashing of 96 percent of the entire field of these checks within the three-year period. What's irrational about it is that the statute doesn't look at the 96 percent. The statute doesn't look at travelers' checks which are not abandoned. It only regulates travelers' checks which are abandoned. So in three years, yes, you've got 96 percent of the travelers' checks that are cashed. But what happens if all of them were cashed the next day? Three years plus one day. Would that be rational to assume that all those travelers' checks were abandoned? And that's the situation here. Because of the remaining travelers' checks, they're not abandoned. They are used. So the focus on the 96 percent which have not been abandoned, it doesn't tell us anything about the remaining travelers' checks and when and how they're used. So how many are unused after the 15-year period? After the 15-year period, it's a much smaller number that are unused. There is some amount that remains, but it's very small. And some of them are then used beyond the 15-year period. Correct. Some of them are used beyond the 15-year period. Why isn't the 15-year period irrational? Because travelers' checks are cashed for many years, one could argue that on the rational basis review, perhaps 15 years is not either. However, So this is really an attack on the principle of escheat itself, not on 15 years or three. No, not at all, because we can see that the state has the ability to escheat property, but it must be based on a rational period. And after 15 years is the national standard. It's been used by 50 states and the District of Columbia until a couple of years ago. It's based on the Uniform Act back to the 1950s and the New Jersey statutes back to the 1960s. So there's a basis for looking at 15 years. However, Your Honor, that is not the question before us today, whether 15 years is rational or 20 years or seven years. There's only one issue here today, is a three-year period which New Jersey enacted. Is that a rational period? American Express has never challenged the 15-year period, but the three-year period, which has no basis in reality, that is the issue that's before us today. And if the legislature could pass a law deeming any property abandoned simply by stating it without any rational connection to how those traveler's checks are actually used, then there'd be no limit on the state's authority. They could deem bank deposits abandoned if not used not three years after being deposited, but three months or three days or three hours. And that certainly couldn't pass constitutional muster. What about some of the other arguments that you've put forward here, contract and takings? The contract clause is the one that I'd like to spend a few minutes on remaining, if possible. The statute also substantially impairs American Express's right to invest the traveler's check proceeds, and we've already talked about that implicit right. The Sixth Circuit in Hollenbeck found that claim to be potentially meritorious. The consideration received by the traveler's checks owners are traveler's checks that continue without expiration, a safe alternative to cash, they don't have to worry about lost or stolen traveler's checks that get replaced. But for American Express, the only consideration it receives is the right to invest the proceeds. It gets nothing else because it charges no fee. So on the traveler's checks that are sold early, it loses money. It is only that small percentage of traveler's checks that are cashed in later years. They subsidize the entire business model. And that period of- Excuse me. Put two more minutes on, please. And the 15-year abandonment period, which had long been in effect in New Jersey and under the Uniform Act, became an implied term of that contract. It's clearly a substantial impairment because it upends the business model. Is there anything on the traveler's check at all that says your money will be held for a period of 15 years before it's turned over to the state where the traveler's check was issued? No. It does not say that. But under the- How does it become an implied term? I mean, how do I know when I put down $500 and get five $100 American Express traveler's checks that you're going to hold that money for 15 years? Well, two answers. The first is the Supreme Court in Anderson hold that escheat periods are within the constructive knowledge of depositors of our monies and banks. So as a matter of law, they have constructive knowledge. But the Nieves Court held that laws in effect at the time of the making of a contract can become implied into that contract. And most of those cases involve situations where the laws or the change of laws affects the consideration. But you do acknowledge that there's nothing at all on the traveler's check or any document issued contemporaneous with that that references any of the facets you just spoke about. I do acknowledge that. And I would simply note that Judge Wilson's decision actually embraces the concept of a contract clause violation in the context of SVC cards, which my colleagues will address. So she acknowledges that the escheat period can violate the contract clause. We just contend that she got it wrong in this particular case relative to traveler's checks. Any other questions? Good. Thank you, Mr. Selinger. Thank you. Good. Good afternoon, Your Honor. Robert Logie, Assistant Attorney General on behalf of Mr. Seidemann-Aristot, Mr. Harris. May it please the Court. In Acting Chapter 25, the legislature adopted a presumptive period of abandonment that, as the District Court found, closely matches and corresponds with consumers' actual behavior. Mr. Selinger says we're looking at the wrong number here. We're not looking at the 96%. We should be looking at the 4% on a due process analysis. Your Honor, the District Court properly concluded in its analysis that the presumptive period of abandonment of three years, 96% of them have been used by that time. That is the proper analysis, and the legislature could have properly and rationally concluded that that correspondence with consumers' actual behavior advances a legitimate state interest. And so where, you know, at what point does the equation change? What if the 96% were redeemed within one year? That would be, in your view, that would be rational as well? With that significant number of redemptions within a certain amount of time? Yes, Your Honor. I mean, there are other forms of property that have presumptive period of abandonment of one year. Payroll checks, for instance. The New Jersey legislature has two. But that's almost a different animal, isn't it? Yes, Your Honor. The legislature has applied different terms of abandonment to different forms of property. That's what I was trying to say. So in going to the three years, they picked a number that closely matches consumers' behavior. And that's the only number that's in the record for the trial court. And the trial court found that that adequately and closely corresponded. And as Your Honor noted, rational basis does not require mathematical nicety or precision from the legislature. Rather, there's an evil at hand, and the legislature could have chosen this was a way to address the issue. So the appropriate number, as the district court found, is the legislature could have rationally concluded the presumptive period of three years was rational to advance the state's interest in unclaimed property. We understand the legislative reasons for this, but most of the evidence seems to show that the state is doing this as a way to raise revenue rather than to safeguard private individuals' rights in property and make sure that it's not lost and it can be reclaimed properly. Is it your position that the tax raising or the revenue raising factor here is part of the legislative purpose or sole legislative purpose, or we shouldn't consider it at all, it's not a factor here? Your Honor, I would answer that question twofold. First, the record does not support that statement. All that we have in the record as to legislative purpose is the legislative statement in the bill itself, which goes to modernizing the properties, bringing more uniformity, and protecting our state's unclaimed property. What legislative record? Can't we look at the terms of the statute itself and what its clear result is and derive from that that revenue enhancement is at least a purpose? Yes, Your Honor, you can. I mean, we don't need a legislative history in the form of debate or anything else to be able to conclude that revenues flow to the treasury of the state of New Jersey. Yes, Your Honor, the court could conclude that one aspect of Chapter 25 had a revenue effect. The Supreme Court has recognized that the state's administration of unclaimed property does have a revenue effect, and they said that it's better to use those funds for the general good rather than have it caught by the fortuitous election of the chance holder. And also, I would note that revenue raising is not an impermissible purpose without suggesting that there's evidence to the record that that was the purpose here, but it's embodied within the U.S. Constitution that the legislature can take steps to raise revenue. So it has been a component of the state's administration of unclaimed property that raising revenue is an incident of that. So yes, Your Honor. Do you want to stay on due process or do you want to move to the contract clause? Whatever the court would prefer, Your Honor. Is there anything else you want to say on due process? No, Your Honor, just that on the record before this Court, American Express has failed to meet its burden of showing its unconstitutional with respect to the contract clause. The district court noted that there was nothing in the record to suggest that the purchaser of a traveler's check assented to or was aware of any contractual term with respect to the contract right that American Express asserts here. This statute does, however, effect a different result for American Express as a seller of traveler's checks than it would for a bank that offers demand deposits, does it not? And by that I mean that when a demand deposit is abandoned, the depositor thereafter is required to pursue his rights to seek refund from the state treasury. Is that correct? Yes, Your Honor. Here, however, American Express has either by contract, and at this point it's not clear to me whether it's an implied contract or even just some kind of undertaking, has declared that they will permit the traveler's check to be cashed, to be redeemed, to be paid ad infinitum, have they not? So in that respect, American Express obligations, contractual or otherwise, are greater than what the obligations of the bank offering demand deposits are. Were there a contractual obligation on these terms? But there's nothing to suggest that the purchaser has any idea whether it's a 15-year or a 3-year period. But aren't you making American Express essentially work for nothing from that point forward? They no longer have the use of this money, but they're required to permit the traveler's check to be redeemed. Well, again, they are, by their terms of agreement, they redeem it and they are able to seek reimbursement from the state for the fund that they've paid the bearer. Yes, sir. Would there not be some time, some loss in the time value of money out over that period of time? Not that's within the protection of the contract clause. There's no contract here with respect to those funds. Is there anything in your express or implied that would indicate that American Express is entitled to a profit from this transaction? No, Your Honor. There is no express terms in this record as to the purchaser's agreement of some profit to be captured by American Express. And what about implied? Is it implied that if you purchase the traveler's check and there was a 15-year period, that during that 15-year period, whatever period, you let the money stay with American Express, that they were entitled to a profit through investment or otherwise? Your Honor, I think both General Motors and NIEVA talk about how laws can become things, and those go to construction validity or enforcement. Unclaimed property laws are not within those narrow forms of law that affect the contractor's obligations under the law. The unclaimed property laws do not become an implied term of the contract. So on this particular issue, according to the State's view, American Express is just out of luck, even though they anticipated and expected certain profits. It was a unilateral expectation, Your Honor, not to stop the contracts. And as the district court probably found, there was no evidence of an actual contract with respect to the 15-year term at all. It's been well established that the holder of abandoned property in New Jersey has no legal or moral claim to that. The New Jersey Supreme Court established that long ago. They have possession and the right to use, but no right to hold. And because the unclaimed property laws don't go to validity, enforcement, or construction, they are not implied terms of the purchase agreement. Mr. Allugi, under Chapter 25 and the totality of New Jersey's cheat laws, what happens to the money once it's turned over to the state of New Jersey from these traverse checks? Your Honor, a portion of the money is put into the unclaimed property trust fund. The administrator of unclaimed property of the state is authorized to give 75 percent of those funds over to the general fund. So a portion of the funds is held in trust, and the administrator has authority to increase or to give less than 75 percent based on experience. So the money is held in perpetuity and in trust for the owner to reclaim it from the state at any time. So if I came in 20 years after the date of issuance with a traverse check, and would I be able to collect on that traverse check from the state of New Jersey? Yes, sir, plus interest. Plus interest? Yes, sir. Thank you. The issue has been raised as well that this is really not a defined protected fund. And you just said that 75 percent of it can go into the general fund. Five or ten years from now, what happens if that trust fund is underfunded? What guarantee is there that the legislature of New Jersey would appropriate money from the general fund and put it into that trust fund? Isn't this the question is how can you really call it a trust fund when all the money is not in there and doesn't stay there for the benefit of the individuals who may claim it? Your Honor, the most that the money is paid originally into the trust fund and then out towards the general revenue. So there's sufficient, and that determination is based on the administrator's expertise and the administration of the property. So it's based on past experience. There's been no, and the state takes seriously its fiduciary obligations to the rightful owners. There's nothing to suggest. Well, I'm sure they take it seriously, but New Jersey, like many other states, is in a difficult financial situation right now because their revenues haven't matched their expenditures. Who's to say that's not going to happen in the future? But the trust fund doesn't rely upon appropriations from the legislature to pay out its claims, Your Honor. And in the event that under this or other amendments to the law, claims experience shows a change, then the administrator's exercise of his statutory authority to give that to the general funds would have to adjust accordingly. It's still a discretionary decision? He cannot give more than 75%. He has no discretion in that regard. It's based on his expertise and past experience. Well, we've seen in the last five years that expertise and past experience hasn't been a very good guide for running the financial system. Well, that's correct, Your Honor, and that is another reason that the state has proffered for why the state's unclaimed property funds are a better custodian of the funds than having them in the hands of private holders or American Express because the state is a perpetually solvent entity and holds the funds in trust on behalf of the owners rather than privately with the risk of bankruptcy. Anything else you want to tell us? Yes, sir, Your Honor. Good. Any other questions for Mr. Logie? Good. Mr. Selinger. Go ahead. With respect to the contract clause argument that was made, going forward, prospectively, of course, American Express could change its business model. It could charge fees. It could stop selling in New Jersey. There are other steps that it could take. But going backwards, there's nothing that can happen retroactively, and the contract clause prohibits states from substantially impairing with contracts retroactively. This statute is retroactive. It affects American Express only. It does absolutely nothing to unite property owners with their property because they will still cash their traveler's checks with American Express and not go to the state five and ten, 15 years out. It is, by the way, Judge Smith, an express term of the contract that they never expire. That is on the face of the check. That appears on the face of the check, does it not? That does appear on the face of the traveler's check, yes. Maybe the only express term on the face of the check. There's not that much on it, correct. Mr. Selinger, if the escheat laws of New Jersey said that after 20 years, the proceeds became the property of the state, that would be a direct violation of that express term. Well, it's not a violation of the term per se because American Express, regardless of the escheat statute, is honored contractually to honor the obligation and will. So 20 years out under this current statute, three years out, these traveler's checks owners still come to American Express. And you're right that under the state's position, American Express is supposed to work for nothing because they have to pay the owner and then make a claim to the state. And they have other obligations such as replacing lost traveler's checks. Excuse me, Mr. Selinger, and I appreciate there's a little delay in the transmission here. But currently, if somebody comes, say, 18 years after the issuance of a traveler's check and presents it to American Express, what happens? If they come 18 years afterwards, they come to American Express. They'll usually do that through a local bank. American Express will pay that claim. And then what will American Express do? And then American Express will check its records, see that the proceeds have already been claimed by the state, and it will make a claim against the state. How does that? Okay, go ahead. I'm sorry. And a year down the road, based on historical usage, they will ultimately have been paid. They will get paid. So that process under Chapter 25 will just accelerate up to three years. And if someone comes five years after the issuance, you'll still pay it and then go back to New Jersey. Correct. And, again, we do not challenge the right of the state of New Jersey to enact abandoned property laws at some rational period, particularly on a prospective basis, not a retroactive basis, but a prospective basis to enact laws that would deem property abandoned. But there's got to be a rational basis for finding that it's abandoned. And to do it retroactively does not pass a muster because it upends the century-old business model on which the entire business has been based. Good. Any other questions? One quick question that has practically, well, effectively nothing to do with the argument. Does anyone else sell traveler's checks anymore other than American Express? No longer. There are traveler's checks subject to the statute that were issued by other traveler's checks issuers that will still be impacted. Do you have any idea what it's like to try to explain to young law clerks what traveler's checks are? It's like what a record player was. Very good. Mr. Selinger, thank you very much. Thank you very much. Good. We thank both counsel for excellent arguments.